25-1623

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

BENJAMIN ESPINOSA,
Plaintiff-Appellee,

v.

WILLIAM GITTERE, Warden; et al.,
Defendants-Appellants

and

NEVADA DEPARTMENT OF CORRECTIONS; et al.,
Defendants.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 3:21-cv-00205-ART-CLB

---

## DEFENDANTS-APPELLANTS' OPENING BRIEF

---

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendants-Appellants*
*David Drummond, William Gittere,*
*Dennis Homan, William Reubart,*
*Harold Wickham and Jon Verde*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...............................................................ii

TABLE OF AUTHORITIES ........................................................v

I.     INTRODUCTION.............................................................1

II.    JURISDICTIONAL STATEMENT .................................3

III.   STATEMENT OF THE ISSUES PRESENTED...............5

IV.    STATEMENT OF CASE AND PROCEDURAL HISTORY ...........6

V.     STANDARD OF REVIEW ...............................................14

VI.    SUMMARY OF ARGUMENT .........................................16

VII.   ARGUMENTS ...................................................................17

     A.     Defendants Are Entitled to Qualified Immunity under Established Precedent ..........................................17

     B.     Defendants Are Entitled to Qualified Immunity Because They Did *NOT* Violate the Eighth Amendment ....19

          1.     Espinosa Failed to Establish that He Faced an Objective Intolerable Risk of Serious Harm from Contaminated Food....................................22

          2.     Espinosa Failed to Establish that Any Defendant Subjectively Knew He Faced an Intolerable and Substantial Risk of Serious Harm from Food Contamination ..........................................26

ii

3.   Defendants did *NOT* Violate the Eighth
      Amendment because They Acted Reasonably.............30

C.   Espinosa Failed to Establish that Each Defendant
      Personally Violated the Eighth Amendment.......................33

D.   Espinosa Failed to Establish that Any Supposed Food
      Contamination Caused Espinosa to Suffer Harm...............34

E.   Warden Gittere Is Entitled to Qualified Immunity
      Because He Did *NOT* Retaliate Against Espinosa in
      Violation of the First Amendment.........................................37

      1.   Espinosa Failed to Meet His Burden of Showing
            that Warden Gittere Personally Took Any
            Adverse Action Against Him .......................................38

      2.   Espinosa Failed to Establish that He Was
            Transferred because He Complained of
            Contaminated Food.....................................................42

      3.   Under Any Objective Standard, Espinosa's
            Speech Was Not Chilled...............................................43

      4.   Espinosa Failed to Meet His Burden of Showing
            that Any Action Taken Was Not in Furtherance
            of a Legitimate Penological Goal .................................45

F.   Espinosa Failed to Meet His Burden of Establishing a
      Violation of Clearly Established Law, Beyond Debate,
      Required to Overcome Qualified Immunity ........................46

G.   This Court Must Accept as True NDOC Factual
      Findings Supported by Substantial Evidence .....................48

VIII.  CONCLUSION.................................................................................53

CERTIFICATE OF COMPLIANCE.........................................................54

iii

CERTIFICATE OF SERVICE..................................................................55

# TABLE OF AUTHORITIES

## CASES

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001)..................................................................14

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)..................................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................ 21, 33, 41

*Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015) ........................29

*Bearchild v. Cobban*, 947 F.3d 1130 (9th Cir. 2020) ..............35

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ................................3

*Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003)...........................21

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011).................................................37

*Campbell v. California Dept. of Corr. & Rehab.*, 463 Fed. Appx. 634, 2011 WL 6425312 (9th Cir. 2011).........................35, 36

*Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024).......... 4, 18, 46, 48

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).........................16

*Centennial Puerto Rico License Corp. v. Telecommunications Regulatory Bd. of Puerto Rico*, 634 F.3d 17 (1st Cir. 2011) ..............51

*Chavez v. Robinson*, 12 F.4th 978 (9th Cir. 2021) ..................37

*City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9 (2021).....................18

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000).............46

v

*Davies v. Allen*, 626 Fed. Appx. 728, 2015 WL 9092186 (9th Cir. 2015) ................................................................................... 46

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) .......................... 14, 15

*Farmer v. Brennan*, 511 U.S. 825 (1994) ....... 19, 20, 25, 27, 28, 29, 30, 47

*Felkins v. City of Lakewood*, 774 F.3d 647 (10th Cir. 2014) ................... 24

*Fraihat v. U.S. Immigration & Customs Enf't*, 16 F.4th 613 (9th Cir. 2021) ................................................................................. 31

*Gray v. Shedd*, 559 Fed. Appx. 621, 2014 WL 791822 (9th Cir. 2014) ................................................................................... 43

*Haggerty v. Fed. Ins. Co.*, 32 Fed. Appx. 845, 2002 WL 463573 (9th Cir. 2002) ................................................................................. 23

*Hamilton v. Hernandez*, 500 Fed. Appx. 592, 2012 WL 6053457 (9th Cir. 2012) ................................................................................. 44

*Holleman v. Zatecky*, 951 F.3d 873 (7th Cir. 2020) ............................... 44

*Hudson v. Palmer*, 468 U.S. 517 (1984) ................................................. 20

*In re Brazier Forest Products, Inc.*, 921 F.2d 221 (9th Cir. 1990) .......... 16

*Intermountain Fair Housing Council v. Boise Rescue Mission Ministries*, 657 F.3d 988 (9th Cir. 2011) ..................................... 22, 23

*Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002) .............................. 21, 33

*Kisela v. Hughes*, 584 U.S. 100 (2018) ........................................... 18, 19

*Landes Construction Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365 (9th Cir. 1987) ........................................................................ 51

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) ................................. 21, 34

vi

*Lenz v. Wade*, 490 F.3d 991 (8th Cir. 2007) ............................................29

*Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017) ...................23

*Lyons v. Barth*, 637 Fed. Appx. 278, 2015 WL 7770242 (9th Cir. 2015) ..................................................................................................43, 44

*McClure v. Tucker*, 276 Fed. Appx. 574, 2008 WL 1912872 (9th Cir. 2008) ..................................................................................................45, 48

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) ...................................33

*Meachum v. Fano*, 427 U.S. 215 (1976) .................................................40

*Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283 (9th Cir. 1999) ........................................................................................................43

*Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975 (9th Cir. 2006) ........................................................................................................15

*Mulligan v. Nichols*, 835 F.3d 983 (9th Cir. 2016) .................................39

*OSU Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012) ...............33

*Panchev v. Pac. Gas & Elec. Co.*, 825 Fed. Appx. 462, 2020 WL 5511817 (9th Cir. 2020) ........................................................23, 35, 36

*Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).............................27, 28

*Phillippi v. Patterson*, 599 Fed. Appx. 288, 2015 WL 1262437 (9th Cir. 2015) ........................................................................................................43

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) .................................................3

*Pratt v. Rowland*, 65 F.3d 802 (9th Cir. 1995)................................... 40, 41, 42, 43, 45, 48

*Ray v. Maceri*, 698 Fed. Appx. 475, 2017 WL 4457203 (9th Cir. 2017) ........................................................................................................45

*Reichle v. Howards*, 566 U.S. 658 (2012) .......................................... 17, 18

*Reilly v. Vadlamudi*, 680 F.3d 617 (6th Cir. 2012).................................34

*Riccardo v. Rausch*, 375 F.3d 521 (7th Cir. 2004) ..................................28

*Riley v. Roach*, 572 Fed. Appx. 504, 2014 WL 1853114 (9th Cir. 2014)...............................................................................42

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) ....................................18

*River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458 (9th Cir. 1992) ..........................................................15

*Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074 (9th Cir. 2003).................................................................................37

*Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703 (9th Cir. 2010)...........................................................................4

*Rolen v. Hansen Beverage Co.*, 193 Fed. Appx. 468, 2006 WL 2441006 (6th Cir. 2006) .........................................................26, 36

*Salazar v. Cnty. of Orange*, 564 Fed. Appx. 322, 2014 WL 1017070 (9th Cir. 2014)..................................................................33

*Sanders v. York*, 446 Fed. Appx. 40, 2011 WL 3152814 (9th Cir. 2011)...................................................................................39

*Sandin v. Conner*, 515 U.S. 472 (1995)..........................................41, 49

*Scott v. Harris,* 550 U.S. 372 (2007)..........................................................4

*Shakur v. Schriro,* 514 F.3d 878 (9th Cir. 2008) ...................................23

*Smith v. Goodenough*, 829 Fed. Appx. 257, 2020 WL 6689992 (9th Cir. 2020..............................................................................45

*Surrell v. Cal. Water Serv.*, 518 F.3d 1097 (9th Cir.2008) ....................38

viii

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989)..........................................33

*Thornburgh v. Abbott*, 490 U.S. 401 (1989) ............................................49

*Trozzi v. Lake County*, 29 F.4th 745 (6th Cir. 2022) .............................29

*Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143 (1946)........................................................................................................50

*United States v. Romo–Chavez*, 681 F.3d 955 (9th Cir. 2012)...............39

*US West Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112 (9th Cir. 1999).....................................................................................50

*US West Communications, Inc. v. Jennings*, 304 F.3d 950 (9th Cir. 2002)...........................................................................................................51

*Weathers v. Hagemeister-May*, 663 Fed. Appx. 547, 2016 WL 5817494 (9th Cir. 2016) ......................................................................42

*Williams v. Wood*, Case No. 06–55052, 223 Fed. App'x 670 (9th Cir. 2007)..........................................................................................20

*Wood v. Yordy*, 753 F.3d 899 (9th Cir. 2014) ...................................42, 43

*Woodford v. Ngo*, 548 U.S. 81 (2006) .........................................49, 50, 52

## STATUTES

28 U.S.C. § 1291 ..........................................................................................3

42 U.S.C. § 1983 ....................................................................................33, 35

42 U.S.C. § 1997e .....................................................................................49

## RULES

9th Cir. R. 32-1 ........................................................................................54

Fed. R. App. P. 32......................................................................................54

ix

Fed. R. App. P. 4................................................................3

Fed. R. Civ. P. 56.......................................................14, 22

Fed. R. Evid. 701...........................................................24

Fed. R. Evid. 702...........................................................24

x

## I.    INTRODUCTION

The district court erred when denying the motion for summary judgment of Defendants-Appellants David Drummond, William Gittere, Dennis Homan, William Reubart, Harold Wickham and Jon Verde, who all asserted their entitlement to qualified immunity as employees or former employees of the Nevada Department of Corrections (NDOC). Contrary to the unsupported conclusory allegations in Plaintiff-Appellee Benjamin Espinosa's complaint, Warden Gittere, former warden of Ely State Prison (ESP), did not retaliate against Espinosa in violation of the First Amendment by transferring him to the infirmary after he grieved that he was extremely sick upon finding a foreign object in his meal. The undisputed admissible evidence establishes that Warden Gittere had no involvement in the transfer decision, and no offender could reasonably believe that a transfer to the infirmary for a short 13 days after claiming extreme illness was an adverse action.

Espinosa's Eighth Amendment claim, alleging Warden Gittere, NDOC Deputy Director Wickham, Associate Warden Drummond, Lt. Homan, Correctional Officer Reubart and ESP Food Services Manager Verde failed to protect Espinosa from food contamination, fares no better.  Espinosa's allegation that his food was contaminated by feces and undetectable detergent is not supported by admissible evidence. No one saw anything being placed in Espinosa's food, and Espinosa fails

1

to offer the required objective expert testimony verifying that feces and detergent did, in fact, contaminate Espinosa's food.  Espinosa's claim of contamination was fully investigated, which revealed no evidence of food tampering.  Defendants therefore had no reason to suspect food tampering, much less know that Espinosa's food had been contaminated, a mandatory requirement to establish an Eighth Amendment violation.  Out of an abundance of caution, however, ESP took action to prevent food tampering, which included random switching of food trays, regular food tasting, and the ESP warden and staff randomly joining inmates for meals.  Even if food contamination was occurring and these policies were not fully effective, that does not establish Defendants personally and knowingly disregarded an objective, substantial, intolerable risk of serious harm required to violate the Eighth Amendment.

Espinosa therefore failed to establish a violation of the First or Eighth Amendment, much less establish a violation of clearly established law, beyond debate, necessary to overcome Defendants' entitlement to qualified immunity.  As Defendants are shielded by qualified immunity, the district court erred when denying Defendants' motion for summary judgment.  This Court should therefore reverse the district court's judgment, and remand with instructions to fully grant the Defendants' motion for summary judgment.

## II.  JURISDICTIONAL STATEMENT

This Court has jurisdiction over Defendants' appeal pursuant to 28 U.S.C. § 1291 because Defendants' notice of appeal was timely filed on March 6, 2025 (4-ER-490-92, ECF No. 110), within thirty (30) days after the district court entered its amended order, on February 27, 2025 (1-ER-2-12, ECF No. 106), denying Defendants' motion for summary judgment asserting qualified immunity.  *See* Fed. R. App. P. 4; *see also Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996) (holding "an order rejecting the defense of qualified immunity" is a "'final' judgment subject to an immediate appeal," which may be raised "at either the dismissal stage or the summary judgment stage").

This Court also has jurisdiction, even though the district court determined that Espinosa raised a genuine dispute of material fact, because the district court wrongly made that determination based on erroneous legal conclusion that the evidence was admissible, when it the law makes clear it was inadmissible evidence.  In *Plumhoff v. Rickard*, 572 U.S. 765, 772–73, (2014) the Supreme Court rejected the argument that an appellate court lacks jurisdiction to exclude immaterial or improperly admitted evidence when reviewing issues, and explained that an appellate court merely lacks jurisdiction over "a question of 'evidence sufficiency,'" i.e. when the material, admissible "evidence in the summary judgment record was sufficient to support a

3

contrary finding." 572 U.S. at 772-73. In reaching that result, the
Court relied upon its holding in *Scott v. Harris,* 550 U.S. 372 (2007).
*Plumhoff*, 572 U.S. at 773. In *Scott*, the Court had no doubts about
jurisdiction, even though the plaintiff's version of the facts told "quite a
different story," when the court "should not adopt that version of the
facts for purposes of ruling on a motion for summary judgment." 550
U.S. at 380-81; *see also Plumhoff*, 572 U.S. at 773; *Carley v. Aranas*, 103
F.4th 653, 658-59 (9th Cir. 2024) (holding even when the "district court
conclude[s] that there is still a genuine dispute of material fact," this
Court has jurisdiction to determine "whether the defendant would be
entitled to qualified immunity as a matter of law," after "assuming all
factual dispute are resolved, and all reasonable inferences are drawn, in
plaintiff's favor"); *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.,* 605
F.3d 703, 707 (9th Cir. 2010) (rejecting argument that the court
"lack[ed] jurisdiction to review . . . the question of qualified immunity"
because "a genuine issue of material fact exists" and holding this Court
"undoubtedly ha[s] jurisdiction to determine whether, taking the facts
in the light most favorable to plaintiffs, defendants would have violated
a constitutional right" because the Court may "disregard material
factual disputes identified by the district court"). Accordingly, this
Court has jurisdiction to consider whether Defendants are entitled to

4

qualified immunity after construing the facts, supported by evidence in the record that would be admissible at trial, in Espinosa's favor.

## III.   STATEMENT OF THE ISSUES PRESENTED

**A.**   Whether the district court erred when denying Defendants' motion for summary judgment, with respect to Plaintiff's claim that Defendants failed to protect Plaintiff from contaminated food in violation of the Eighth Amendment, when (1) Plaintiff has no objective admissible evidence that his food was contaminated, (2) an investigation revealed no food tampering and therefore Defendants had no reason to suspect food tampering, and (3) Defendants nevertheless enacted precautionary measures to prevent food tampering.

**B.**   Whether the district court erred when denying Defendants' motion for summary judgment, with respect to Plaintiff's claim that the warden retaliated against Plaintiff in violation of the First Amendment by transferring him to the infirmary after he grieved that he was extremely sick upon finding a foreign object in his meal, when the warden had no involvement in the transfer decision, and no offender could reasonably believe that a transfer to the infirmary for a short 13 days after claiming extreme illness was an adverse action.

**C.**  Whether Plaintiff failed to meet his burden of proof that each Defendants' own actions personally violated a right, clearly established

5

beyond debate, required to overcome Defendants' entitlement to qualified immunity.

## IV.  STATEMENT OF CASE AND PROCEDURAL HISTORY

Espinosa is an offender legally incarcerated in NDOC custody and was housed at Ely State Prison between 2019 and 2021.  4-ER-414-443, ECF No. 23.  On September 19, 2019, approximately 40 inmates complained to staff that they were sick from contaminated food served the previous day, September 18, 2019.  2-ER-102, 107, 140, 148, 151, ECF No. 74 at 5, 13, 14, 16, ECF No. 75 at 3, 8; 3-ER-362, ECF No. 62-4 at 3:1-3.  The health problems reported included "bubble guts," vomiting, acid reflux, severe heartburn, mild fever, stomach cramps, and numbness of the tongue.  2-ER-145, 149, 152, ECF No. 74 at 10, 14, 17; 4-ER-419, ECF No. 23 at 6.

Warden Gittere requested an investigation into the complaints of tampering, and referred offenders' medical complaints to medical staff, on the day it occurred.  2-ER-102-07, ECF No. 75 at 3-8; 3-ER-290, ECF No. 62-1 at 3; 3-ER-362, ECF No. 62-4 at 3.  Upon investigation, offenders complained of "the food smelling or tasting bad," leading offenders to speculate that "feces" was in the food.  2-ER-105, ECF No. 75 at 6.  Offenders nevertheless reported that they finished their meal, with a few indicating that they ate extra food.  2-ER-107, ECF No. 75 at 8.  Medical staff "took the vital signs each inmate" that complained "of

6

an illness from the alleged feces being placed in the food," including Espinosa. 3-ER-371, ECF No. 52-7 at 3. While a few inmates were "pale and nauseous," "Espinosa was not one of those inmate's who were pale and nauseous." 3-ER-371, ECF No. 52-7 at 3. The examination of these inmates did not reveal "serious variations of those inmates' vital signs," with no sign of fever, and "all inmates assessed and illustrated symptoms refused infirmary care." 2-ER-107, ECF No. 75 at 8; 3-ER-371, ECF No. 52-7 at 3.

After "the investigation was completed," which included reviewing video of meal preparation and interviewing staff and culinary workers, "no evidence of tampering was found." 2-ER-107, ECF No. 75 at 8; 3-ER-362, ECF No. 62-4 at 3. As "a precautionary measure," ESP staff would switch food between carts to deter the tampering of offenders' food. 2-ER-205, 74-ECF No. 74 at 70; 3-ER-290, 62-1 at 3:7-8. Food Service Manger Verde would also "taste the food that [was] prepared at ESP, on a regular basis" and "never became ill." 3-ER-368, 62-6 at 3:11-12. Warden Gittere also established "Warden Dinner Tours" to prove to offenders . . . that the food prepared and delivered to Ely State Prison's culinary was safe for everyone." 2-ER-185, ECF No. 74 at 50; 4-ER-422, ECF No. 23 at 9. Warden Gittere "never advised staff of the time or location of the tours before [he] conducted them" and "[m]any times . . . did them completely alone to ensure complete

7

integrity of that purpose." 2-ER-185, ECF No. 74 at 50. For example, on September 19, 2019, Warden Gittere and selected staff members had dinner with offenders which was not contaminated. 2-ER-102, ECF No. 75 at 3.

Offenders who worked as porters, including Espinosa, speculated that the switching technique was ineffective because they could see that the food trays were marked with cell numbers before being switched. 2-ER-139-40, 145, ECF No. 74 at 4-5, 10; 4-ER-419, ECF No. 23 at 6. While Espinosa allegedly informed Warden Gittere, Associate Warden Drummond and Correctional Officer Reubart that the cart switching tactic was not working, Espinosa does not allege that he informed them that numbering on the food trays was problematic. 2-ER-140, ECF No. 74 at 5; 4-ER-419, ECF No. 23 at 6.

On May 31, 2020, Espinosa complained to staff that "white flash" "an odorless, tasteless cleaning detergent," was being mixed in the egg whites being served for breakfast. 2-ER-108; ECF No. 75 at 9; 4-ER-418, ECF No. 23 at 5. While Espinosa failed to provide any specific dates, he complained that it caused his stomach to bubble and made him sick and weak. 2-ER-108, ECF No. 75 at 9. No other offender, however, reported similar complaints. 2-ER-108, ECF No. 75 at 9. Culinary and medical staff were advised of the complaint, and food preparation continued to be monitored. 2-ER-108, ECF no. 75 at 9.

8

On January 2, 2020, Espinosa submitted an informal grievance complaining that he "had no way to ensure that [his] food is not being tampered with" and that today "his mouth got extremely dry from the chemical test." 3-ER-353, ECF No. 62-2 at 63. On February 26, 2020, the informal grievance was denied because the administration had already "put into place checks and balances for this not to occur," which "was being done and documented on a continual basis by authorized staff." 3-ER-353, ECF No. 62-2 at 63. Espinosa did not appeal this denial. 3-ER-353, ECF No. 62-2 at 63.

At an examination on March 27, 2020, Espinosa complained of "acid reflux, heartburn, and concerns about H. Pylori," which "issues have been going on for 8 years but never this bad." 3-ER-282, ECF No. 62-8 at 11. Espinosa was diagnosed with acid reflux. 3-ER-282, ECF No. 62-8 at 11.

On June 6, 2020, Espinosa sent an Inmate Request to Warden Gittere complaining that he found a "wire" from what Espinosa speculated was a "scotch bright" in his food. 2-ER-110, ECF No. 75 at 11. The Inmate Request was received by the Warden's Office on June 8, 2020. 2-ER-110, ECF No. 75 at 11. Warden Gittere, however, had no recollection of receiving that request. 2-ER-185, ECF No. 74 at 50.

On June 8, 2020, Espinosa submitted an informal grievance complaining that he "found a piece of scotch brite brillo pad metal in my

9

diner . . . Saturday last week," June 5, 2020, and that he "got extremely sick in my digestive system bubbling and throwing up." 2-ER-171-73, ECF No. 74 at 36-38; 3-ER-346, ECF No. 62-2 at 56. Espinosa, however, now admits that the wire was discovered before he ate his meal, when he was supposedly washing his chicken. 4-ER-420, ECF No. 23 at 7.

That same day Espinosa was allegedly extracted from his cell and relocated to the infirmary where he was held in custody for thirteen (13) days. 2-ER-138, ECF No. 74 at 4; 4-ER-421, ECF No. 23 at 8. Warden Gittere, however, had no involvement in the transfer, and did not order the Corrections Emergency Response Team (CERT) to extract Espinosa from his cell. 3-ER-290, ECF No. 62-1 at 3.

In an Inmate Request, received by the Warden's Office on June 10, 2020, Espinosa complained that Gittere "uprooted [Espinosa] from his cell" and asks to be returned to his cell. 2-ER-113, ECF No. 75 at 14. A response that was not signed by Warden Gittere stated: "No, I'm concerned for your health, work with medical and they will try to help you." 2-ER-113, ECF No. 75 at 14.

On June 26, 2020, Food Service Manager Verde denied Espinosa's informal grievance because if a piece of brillo pad was in Espinosa's food "it was an unfortunate accident and not done on purpose," as Espinosa's "complaint was the only one received from that meal." 2-ER-174, ECF

10

No. 74 at 39; 3-ER-346, ECF No. 62-2 at 56. Espinosa was advised that "culinary cooks are supervised . . . in the preparation and delivery of food." 2-ER-174, ECF No. 74 at 39; 3-ER-346, ECF No. 62-2 at 56. The response concluded: "There is not any tampering of the food occurring." 2-ER-174, ECF No. 74 at 39; 3-ER-346, ECF No. 62-2 at 56.

Espinosa appealed the denial to the first level. 2-ER-175, ECF No. 74 at 40; 3-ER-346, ECF No. 62-2 at 56. On September 10, 2020, Warden Gittere denied the first level grievance because: "If a piece of metal from the brillo pad made it into your meal, there is no proof that it was intentional, [as] an accident could happen." 2-ER-176, ECF No. 74 at 41; 3-ER-347, ECF No. 62-2 at 57. Espinosa was reminded that, pursuant to OP 269, if Espinosa believed that his meal was "not satisfactory for any reason," he was required "to notify unit staff and an additional meal will be prepared for [him] if the claims can be substantiated." 2-ER-176, ECF No. 74 at 41; 3-ER-347, ECF No. 62-2 at 57. Espinosa was informed that "culinary inmates are supervised at all times by the Food Service Manger's staff and custody staff" and "due to the fact the food trays are switched (GP tier and PS tier) at random, it is unlikely that a culinary worker would intentionally tamper with food that could potentially be served to their tier." 2-ER-176, ECF No. 74 at 41; 3-ER-347, ECF No. 62-2 at 57.

11

Espinosa appealed the denial of his first level grievance to the second level. 2-ER-177-79, ECF No. 74 at 42-44; 3-ER-347, ECF No. 62-2 at 57. On October 27, 2020, Deputy Director Wickham denied Espinosa's second level grievance because "[a]ll OPs are being followed at ESP," with "the extra precaution of switching trays at random, on random days . . . to ensure that food is not tampered with." 2-ER-180, ECF No. 74 at 45; 3-ER-347, ECF No. 62-2 at 57. Espinosa was informed that "ESP staff do not tell inmates when or what trays they are switching because the days constantly change [when] they do it." 2-ER-180, ECF No. 74 at 45; 3-ER-347, ECF No. 62-2 at 57.

On May 10, 2021, Espinosa submitted a civil rights complaint to the district court, alleging claims under 42 U.S.C. § 1983. 4-ER-459-472, ECF No. 8. On March 3, 2022, Espinosa filed a first amended complaint. 4-ER-414-43, ECF No. 23. In his amended complaint, Espinosa alleges that Warden Gittere retaliated against Espinosa, in violation of the First Amendment, by transferring him to the infirmary after submitting the Inmate Request to the Warden's Office concerning finding a wire in his food. 4-ER-424, ECF No. 23 at 11. Espinosa also alleged Deputy Director Wickham, Warden Gittere, Associate Warden Drummond, Lt. Homan, Correctional Officer Reubart and Food Services Manager Verde violated the Eighth Amendment by failing to protect Espinosa from feces and other contamination in his food. 4-ER-424-25,

12

ECF No. 23 at 11-12. Espinosa further alleged that Director of Nursing Carpenter, Nurse Stark and Nurse Jones violated the Eighth Amendment by not treating Espinosa's claimed food poisoning. 4-ER-425-26, ECF No. 23 at 12-13. The district court screened the amended complaint and permitted these three claims to proceed. 4-ER-444-58, ECF No. 22.

Because Defendants did not violate Espinosa's rights and are entitled to qualified immunity, Defendants moved for summary judgment. 3-ER-266-389; ECF No. 62. After the motion was fully briefed (2-ER-81-86, 223-55; ECF Nos. 72, 82), the Magistrate Judge properly recommended that Defendants' motion be granted in full (1-SER-28-43, ECF No. 83). The Magistrate Judge noted that Espinosa voluntarily dismissed his Eighth Amendment claim alleging inadequate medical treatment. 1-ER-31, ECF No. 83 at 4:16-18 citing 2-ER-254, ECF No. 72 at 32. In an order filed March 29, 2024, the district court adopted the Magistrate Judge's recommendation. 1-SER-24-27, ECF No. 87.

On April 18, 2024, Espinosa moved to reconsider the district court's grant of Defendants' motion for summary judgment on the retaliation claim and the failure to protect claim. 2-ER-50-57, ECF No. 90. After Defendants opposed the motion (2-ER-45-49; ECF Nos. 90), the district court improperly granted the motion for reconsideration, on

13

February 4, 2025, thus denying Defendants' motion for summary judgment with respect to Espinosa's retaliation and failure to protect claims (1-ER-13-23, ECF No. 102).

On February 27, 2025, the district court amended its order granting the motion for reconsideration. 1-ER-2-12, ECF No. 106. As Defendants did not violate Espinosa's rights, much less rights that were clearly established, beyond debate, necessary to overcome Defendants' entitlement to qualified immunity, on March 6, 2025, Defendants filed a timely notice of appeal with respect to the district court's judgment. 4-ER-490-92, ECF No. 110.

## V.  STANDARD OF REVIEW

A ruling on a motion for "summary judgment is reviewed *de novo*." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). "Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when, viewing the facts in the light most favorable to the nonmoving party, (1) there is no genuine issue of material fact, and (2) the moving party is entitled to summary judgment as a matter of law." *Arpin*, 261 F.3d at 919. In *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), this Court explained that the "party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial." To meet this burden when "the nonmoving party has the burden of proof at trial,

14

the moving party need only point out [by argument] that there is an absence of evidence to support the nonmoving party's case." *Id*.; *see also Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (same). "The moving party need not disprove the other party's case." *Id*. Once the moving party makes this showing, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076. "Only admissible evidence may be considered in deciding a motion for summary judgment." *Miller*, 454 F.3d at 987. "Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id*. at 988. "To survive a motion for summary judgment, plaintiffs must produce sufficient evidence to establish the existence of every essential element of their case on which they will bear the burden of proof at trial." *River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992). "If the nonmoving party fails to make such a showing, summary judgment will be granted because 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *In re Brazier Forest Products, Inc.*, 921 F.2d 221,

223 (9th Cir. 1990) quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## VI.  SUMMARY OF ARGUMENT

Defendants are entitled to qualified immunity.  Warden Gittere did not retaliate against Espinosa in violation of the First Amendment. The undisputed admissible evidence establishes that Warden Gittere had no involvement in the decision to transfer Espinosa to the infirmary, and no offender could reasonably believe that a transfer to the infirmary for a short 13 days after claiming extreme illness was an adverse action.

Defendants also did not violate the Eighth Amendment by failing to protect Espinosa from contaminated food.  Espinosa lacks the required objective expert testimony to establish that his food was actually contaminated. An investigation revealed no food tampering and therefore Defendants had no reason to suspect food tampering, much less know that Espinosa's food had been contaminated, a mandatory requirement to establish an Eighth Amendment violation. ESP nevertheless enacted precautionary measures to prevent food tampering.  Even if food contamination was occurring and these policies were not fully effective, that is not deliberate indifference required to violate the Eighth Amendment.

16

As Espinosa failed to establish a violation of the First or Eighth Amendment, much less establish a violation of clearly established law, beyond debate, necessary to overcome Defendants' entitlement to qualified immunity, the district court erred when denying Defendants' motion for summary judgment. This Court should therefore reverse the district court's judgment denying Defendants' motion, and remand with instructions to fully grant Defendants' motion for summary judgment.

## VII. ARGUMENTS

### A. Defendants Are Entitled to Qualified Immunity under Established Precedent

This Court should reverse the district court's denial of Defendants' motion for summary judgment because they are entitled to qualified immunity. In *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), the Supreme Court held "[q]ualified immunity shields . . . state officials from money damages unless a plaintiff . . . show[s] (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 743. In *Reichle v. Howards*, 566 U.S. 658, 664, (2012), the Supreme Court explained to "be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that

17

right." The "right allegedly violated must be established, not as a broad general proposition, but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id*. at 665. "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 664. "This 'clearly established' standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can reasonably anticipate when their conduct may give rise to liability for damages." *Id*.

In *Carley*, this Court recognized "the Supreme Court 'has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.'" 103 F.4th at 660–61, quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). "It is not enough that a rule be suggested by then-existing precedent." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021). "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. "Thus, to show a violation of clearly established law, [plaintiff] must identify a case that put [each defendant] on notice that his specific conduct was unlawful." *Id*.

18

Officers "are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 584 U.S. at 104. "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id*. at 105. Accordingly, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 104.

The district court erred when denying Defendants' motion for summary judgment because Espinosa failed to show a violation of a right, much less a clearly established right required to overcome qualified immunity.

## B. Defendants Are Entitled to Qualified Immunity Because They Did *NOT* Violate the Eighth Amendment

Defendants did not violate the Eighth Amendment. The Eighth Amendment requires prison officials to provide "humane conditions of confinement" with due regard for inmate health and safety. *Farmer v. Brennan*, 511 U.S. 825, 832, 837 (1994). To show a violation, an inmate must first "objectively" establish that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 834. Second, the inmate must establish that the official "was subjectively

19

aware of the risk," but "deliberate indifferen[t] to [an] inmate['s] health or safety." *Id.* at 829, 834.

For a risk to be "objectively" "substantial" under the first prong, an offender must show more than a risk of serious harm which is merely possible. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Accordingly, to show an objectively substantial risk of serious harm, the offender must establish "a 'strong likelihood' rather than a 'mere possibility'" of harm. *Williams v. Wood*, Case No. 06–55052, 223 Fed. App'x 670, 671 (9th Cir. 2007) (holding that "speculative and generalized fears of harm . . . do not rise to a sufficiently substantial risk of serious harm").

Under the second "subjective" prong, "deliberate indifference" can only be established if the prison official "knowingly and unreasonably disregard[s] an objectively intolerable risk of harm." *Farmer*, 511 U.S. at 824, 828, 837. "[D]eliberate indifference entails something more than mere negligence." *Id.* at 835. The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison "official's failure to alleviate a significant risk that he should have perceived but did not" does not establish deliberate indifference. *Farmer*, 511 U.S. at 838.

20

Moreover, Espinosa must establish that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that a plaintiff). To "be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which the plaintiff complains." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in the original). "In order to prevail and recover damages against any of the named prison officials," Espinosa "must prove (1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the eighth amendment and (2) that this indifference was the actual and proximate cause of the deprivation of the inmates' eighth amendment right to be free from cruel and unusual punishment." *Id.* at 634. When determining whether any Defendant violated the Eighth Amendment, "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which [the courts] are ill-equipped." *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003).

21

### 1. Espinosa Failed to Establish that He Faced an Objective Intolerable Risk of Serious Harm from Contaminated Food

Contrary to the district court's conclusion, Espinosa failed to establish that he faced an objective intolerable risk of serious harm. The district court wrongly relied on Espinosa's allegations that "he was exposed to feces and cleaning detergent in his food" to establish that he faced an objective intolerable risk of serious harm. 1-ER-17, 40; ECF Nos. 83 at 13:25-28, 102 at 5:27-28. Espinosa's allegations, however, are inadmissible because they are not based on personal knowledge.

Pursuant to Fed. R. Civ. P. 56(c)(4), an "affidavit or declaration used to . . . oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." In *Intermountain Fair Housing Council v. Boise Rescue Mission Ministries*, 657 F.3d 988, 998 (9th Cir. 2011), this Court held a plaintiff failed to "put forward competent evidence" necessary to oppose summary judgment when the affiant "provid[ed] no explanation for how she became aware" of the facts set forth in the affidavit, "and therefore has failed to demonstrate that [the affiant] has personal knowledge of those" facts. This Court reasoned: "Conclusory affidavits that do not affirmatively show personal knowledge of specific facts are

22

insufficient to defeat summary judgment." *Id.*; *Shakur v. Schriro,* 514 F.3d 878, 890 (9th Cir. 2008) (same).

Similarly, in *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017), this Court declared that "a witness must have 'personal knowledge of the matter' to which she testifies" in order to oppose summary judgment." This Court held that when testimony used to oppose summary judgment "lack[s] proper foundation to testify" then the witness is "not in a position to know" and therefore the testimony is inadmissible and does not create a "genuine dispute" necessary to oppose summary judgment. *Id.*; s*ee also Haggerty v. Fed. Ins. Co.*, 32 Fed. Appx. 845, 848, 2002 WL 463573 (9th Cir. 2002) (holding district court "properly excluded certain extrinsic evidence [declarant] proffered" used to oppose summary judgment because the "declaration . . . lack[ed] foundation in that there was no evidence [the declarant] had personal knowledge" concerning the testimony offered).

Espinosa provides no foundation which would establish that any supposed witness has personal knowledge that feces and cleaning detergent was in Espinosa' food, much less that any witness was actually competent to so testify. In *Panchev v. Pac. Gas & Elec. Co.*, 825 Fed. Appx. 462, 463, 2020 WL 5511817 (9th Cir. 2020), this Court held that the "plaintiff failed to raise a genuine dispute of material fact as to . . . whether plaintiff's alleged injuries resulted from his exposure

23

to elevated levels of arsenic or uranium" because "evidence submitted by plaintiff in opposition to summary judgment . . . constituted inadmissible lay opinion on matters requiring scientific, technical, and specialized knowledge and neither plaintiff nor the other declarants were qualified as experts on such matters under Federal Rule of Evidence 702." Rule 702 requires: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

As explained by the Tenth Circuit in *Felkins v. City of Lakewood*, 774 F.3d 647, 651 (10th Cir. 2014), a plaintiff's "lay evidence" concerning the cause of her medical condition "is inadmissible in court and thus cannot be used to oppose summary judgment" when the plaintiff "does not claim to be a medical expert." The court reasoned that "[s]uch lay evidence . . . cannot be 'based on scientific, technical, or other specialized knowledge," as required by Fed. R. Evid. 701, and therefore is inadmissible for purposes of summary judgment. *Id*.

Neither Espinosa, nor any other witness offered by him, has the skill, education, and training required to form an opinion as to whether any of the food consumed by Espinosa was contaminated by feces or detergent. To the contrary, the only evidence that Espinosa's food

24

contained feces was offenders' complaints of "the food smelling or tasting bad," leading offenders to merely speculate that "feces" was in the food. 2-ER-105, ECF No. 75 at 6; *see also* 2-ER-107, 148, 151, ECF No. 74 at 13, 16, ECF No. 75 at 8. After "the investigation was completed," which included reviewing video of meal preparation and interviewing staff and culinary workers, "no evidence of tampering was found." 2-ER-107, ECF No. 75 at 8; 3-ER-362, ECF No. 62-4 at 3. Moreover, medical staff "took the vital signs each inmate" that complained "of an illness from the alleged feces being placed in the food," including Espinosa. 3-ER-371, ECF No. 52-7 at 3. While a few offenders were "pale and nauseous," "Espinosa was not one of those inmate's who were pale and nauseous." 3-ER-371, ECF No. 52-7 at 3. The examination of these inmates did not reveal "serious variations of those inmates' vital signs," with no sign of fever, and "all inmates assessed and illustrated symptoms refused infirmary care." 2-ER-107, ECF No. 75 at 8; 3-ER-371, ECF No. 52-7 at 3. Accordingly, Espinosa can offer no admissible objective evidence required by *Farmer* showing that his food had been contaminated by feces.

Espinosa has even less evidence with respect to his food being contaminated with detergent. Espinosa admits that the detergent was both "odorless" and "tasteless." 2-ER-108; ECF No. 75 at 9; 4-ER-418, ECF No. 23 at 5. No other offender reported similar complaints. 2-ER-

25

108, ECF no. 75 at 9. Espinosa, therefore, concedes that he had absolutely no ability to detect detergent in his food.

In *Rolen v. Hansen Beverage Co.*, 193 Fed. Appx. 468, 469-74, 2006 WL 2441006, at *1-*6 (6th Cir. 2006), the Sixth Circuit affirmed the grant of summary judgment in favor of the defendants, despite plaintiff's claim that a juice box contained "staphylococcal food poisoning," even though the plaintiff declared that the juice box "tasted like something might be wrong" and he "began to feel ill about 20–30 minutes after consuming" the juice box, after which "he suffered from dizziness and dry heaves, and had his son call an ambulance" because a qualified expert failed to test the juice box or opine that the juice box caused plaintiff's symptoms. The court reasoned that establishing food contamination requires "either expert testimony or . . . a combination of both expert and lay testimony." *Id.* at 474.

As Espinosa has no objective admissible evidence that his food was contaminated at all, Defendants could not have violated the Eighth Amendment based on alleged risks of food contamination.

### 2. Espinosa Failed to Establish that Any Defendant Subjectively Knew He Faced an Intolerable and Substantial Risk of Serious Harm from Food Contamination

Espinosa offers no admissible evidence establishing that any Defendant knew Espinosa's food was contaminated and therefore

26

Defendants could not know that Espinosa faced an intolerable, substantial risk of serious harm, as required by *Farmer*. An investigation requested by Warden Gittere revealed that the food provided to Espinosa was not contaminated, and there was "not any tampering of the food occurring." 2-ER-107, 174, ECF No. 74 at 39, ECF No. 75 at 8; 3-ER-346, 362, ECF Nos. 62-2 at 56, 62-4 at 3. Defendants could not actually "know" that Espinosa faced any risk of harm from contaminated food when investigations revealed that no tampering was occurring.

In *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014), this Court held that an inmate cannot show a prison official should have been aware of any risk" to an inmate, "let alone that [the prison official was actually was aware" when the prison official "relied on the . . . opinions of [others] who had investigated [the inmate's] complaints." The court reasoned that the inmate therefore could not establish "a wanton infliction of unnecessary pain," required to establish an Eighth Amendment violation. *Id.* at 1086-87. As the investigation revealed no tampering with Espinosa's food, he cannot show that any Defendant should have been aware of a risk of contamination, much less that any Defendant was actually aware of a risk to Espinosa due to food contamination, as required by *Farmer* and *Peralta*.

27

Contrary to the district court's conclusion, a reasonable juror could not find that any Defendant actually knew that Espinosa's food was being contaminated based on offenders' complaints. 1-ER-8, ECF No. 106 at 8. First, as already set forth, no offender has indicated that he saw any food tampering. Offenders simply lack the expertise required to determine that either feces or detergent was in their food, and therefore their complaints could not impart the knowledge required to establish deliberate indifference. Even if Defendants "should have perceived" that offenders faced a significant risk due to food tampering, that is far removed from the requirement of actual knowledge established by the Supreme Court in *Farmer*. 511 U.S. at 838, 842-44 (holding that an "official's failure to alleviate a significant risk that he should have perceived but did not" does not establish deliberate indifference).

Moreover, in *Peralta*, this Court held that inmate complaints could not provide the awareness required to establish deliberate indifference because such "complaints often allege numerous violations, many of which turn out not be supported by the evidence." 744 F.3d at 1087. Similarly, in *Riccardo v. Rausch*, 375 F.3d 521, 528 (7th Cir. 2004), the Seventh Circuit held that a "prisoner's bare assertion is not enough to make [a prison official] subjectively aware of a risk, if the objective indicators do not substantiate the inmate's assertion" because

28

"[s]ome prisoners are manipulative and cry 'wolf,'" and therefore prison officials "must discriminate between serious risks of harm and feigned or imagined ones."[1]  Defendants were not required to believe Espinosa's and his fellow offenders' complaints of food tampering when the investigation made at the time did not support those complaints. Espinosa therefore failed to establish that any Defendant actually knew that Espinosa suffered any risk of harm from food tampering, as required by *Farmer*.  511 U.S. at 846; *see also Trozzi v. Lake County*, 29 F.4th 745, 756, 758–59 (6th Cir. 2022) (concluding that a reasonable officer, "without the benefit of hindsight," would not have known the detainee was suffering from a serious medical need after hearing the plaintiff's complaints of stomach pain even though the plaintiff later needed surgery for a perforated ulcer).

---

[1] *See also Ball v. LeBlanc*, 792 F.3d 584, 595 (5th Cir. 2015) (holding held that a "prison administrator who has received an administrative remedy request [asserting a risk to an inmate's health] is not necessarily made aware, without factual corroboration, that there is a substantial risk of serious harm" because "[s]eparating the few meritorious complaints from the mountain of frivolous complaints is as difficult work for prison officials as for federal courts"); *Lenz v. Wade*, 490 F.3d 991, 996 (8th Cir. 2007) (holding that "uncorroborated grievance" could only have established that the warden "suspected" that inmate faced a "substantial risks of serious harm," but did not show that the warden "actually knew" the inmates faced a substantial risks of serious harm").

29

### 3. Defendants did *NOT* Violate the Eighth Amendment because They Acted Reasonably

Even if Espinosa could establish that any Defendant had personal, actual, subjective knowledge of an intolerable substantial risk of serious harm due to food contamination, Espinosa cannot establish that any Defendant actually "disregarded" that risk. *Farmer*, 511 U.S. at 837. In *Farmer*, the Supreme Court held "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause" even when "the harm ultimately was not averted." *Id*. at 844-45.

As "a precautionary measure," ESP staff would switch food between carts to deter the tampering of inmates' food." 2-ER-205, 74-ECF No. 74 at 70; 3-ER-290, 62-1 at 3:7-8. Food Service Manger Verde would also 'taste the food that [was] prepared at ESP, on a regular basis" and "never became ill." 3-ER-368, 62-6 at 3:11-12. Warden Gittere also established "Warden Dinner Tours" to prove to offenders . . . that the food prepared and delivered to Ely State Prison's culinary was safe for everyone." 2-ER-185, ECF No. 74 at 50; 4-ER-422, ECF No. 23 at 9. Warden Gittere "never advised staff of the time or location of the tours before [he] conducted them" and "[m]any times . . . did them completely alone to ensure compete integrity of that purpose." 2-ER-185, ECF No. 74 at 50. For example, on September 19, 2019, Warden

30

Gittere and selected staff members had dinner with offenders which was not contaminated. 2-ER-102, ECF No. 75 at 3.

Rather than deliberate indifference, the established facts demonstrate that ESP appropriately responded to the offenders' complaints of food contamination. In *Fraihat v. U.S. Immigration & Customs Enf't*, 16 F.4th 613, 618-19, 637 (9th Cir. 2021), this Court held that immigration detainees failed to show that immigration officials "acted with 'deliberate indifference' to medical needs or in 'reckless disregard" of health risks," when the immigration officials "took steps to address COVID-19," even though the "response to the COVID-19 pandemic may have been imperfect, even at times inadequate." The Court reasoned there "is considerable distance between imperfect implementation of a policy, or even knowledge of the imperfect implementation of a policy, and deliberate indifference in the constitutional sense." *Id*. at 647. This Court concluded that even though immigration officials "might have approached the pandemic more effectively," immigration detainees did not show immigration officials' actions "reflected deliberate indifference or reckless disregard" of a substantial risk because courts must give "due consideration for the Executive Branch's preeminent role in managing immigration detention facilities and its greater institutional competence in this area." *Id*. at 638-42.

31

Here, ESP investigated offenders' complaints, which included reviewing video of meal preparation and interviewing staff and culinary workers, and "no evidence of tampering was found." 2-ER-107, ECF No. 75 at 8; 3-ER-362, ECF No. 62-4 at 3. ESP also implemented policies to respond to offenders' complaints of food tampering, including random switching of food trays, regular food tasting, and randomly joining offenders for meals. 2-ER-185, 205 ECF No. 74 at 50, 70; 3-ER-290, 368, ECF Nos. 62-1 at 3:7-8, 62-6 at 3:11-12; 4-ER-422, ECF No. 23 at 9. Even if these policies may not have prevented all food contamination, that does not establish a violation of the Eighth Amendment. Even if ESP might have approached the offenders' complaints more effectively and even if the response to those complaints may have been imperfect, ESP's response can hardly be described as "deliberate indifference" or a "reckless disregard" to an intolerable and substantial risk of serious harm to Espinosa. The district court erred because it failed to afford ESP the legally required wide latitude in responding to Espinosa's complaints of food contamination.

As Espinosa cannot establish either the objective or subjective prong, and Defendants acted reasonably in any event, Defendants did not violate the Eighth Amendment. This Court should therefore reverse the district court's denial of Defendants' motion for summary judgment, and remand with instructions to grant the motion.

32

### C. Espinosa Failed to Establish that Each Defendant Personally Violated the Eighth Amendment

Contrary to the district court's implied conclusion, Espinosa cannot establish a constitutional violation against each individual Defendant based on their collective actions because those collective acts cannot be imputed to each individual Defendant required to establish personal participation. In *Iqbal*, the Supreme Court held that because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676. Similarly in *Jones*, this Court held that "to be liable under [42 U.S.C. §] 1983 there must be a showing of personal participation in the alleged rights deprivation." 297 F.3d at 934; *see also OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) ("[E]ach government official, his or her title notwithstanding, is only liable for his or her own misconduct") (quoting *Iqbal*, 556 U.S. at 677); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant").

For example, in *McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996), this Court held that a plaintiff could not establish a claim for relief when Plaintiff failed to "say which wrongs were committed by which defendants." Likewise, in *Salazar v. Cnty. of Orange*, 564 Fed. Appx. 322, 2014 WL 1017070 (9th Cir. 2014), this Court held that

33

plaintiff could not establish a claim for relief when he "impermissibly lumped together claims and defendants." *See also Reilly v. Vadlamudi*, 680 F.3d 617, 626-29 (6th Cir. 2012) (holding that a plaintiff failed to establish a "constitutional violation against each individual defendant" because "the collective acts of defendants cannot be ascribed to each individual defendant").

In its order, the district court points to no evidence, admissible at trial, which would establish that each Defendant, though their own personal actions, knowingly disregarded an intolerable and substantial risk of serious harm to Espinosa. Accordingly, the district court erred when denying Defendants' motion for summary judgment.

### D. Espinosa Failed to Establish that Any Supposed Food Contamination Caused Espinosa to Suffer Harm

Espinosa failed to offer any admissible evidence that his stomach troubles were caused by food contamination. As mandated by *Leer*, Espinosa must establish the "requisite causal connection between each individual prison official's actions and the eighth amendment violation." 844 F.2d at 634. The district court erred when denying Defendants' motion for "summary judgment because [Espinosa had] failed to allege facts which demonstrate that any particular prison official was the actual and proximate cause of any constitutional violation." *Id.*

34

In *Campbell v. California Dept. of Corr. & Rehab.*, 463 Fed. Appx. 634, 635–36, 2011 WL 6425312, at *1 (9th Cir. 2011), this Court held that "[s]ummary judgment on [a prisoner's] deliberate indifference claim was proper with respect to each defendant" because the prisoner "failed to present sufficient evidence of causation between the alleged violations and any food-borne illness." This Court reached this result because the prisoner failed to meet the "causation requirement" of "both causation-in-fact and proximate causation." *Bearchild v. Cobban*, 947 F.3d 1130, 1150 (9th Cir. 2020).

Similarly, in *Panchev,* this Court held the "district court properly granted summary judgment" because the plaintiff, asserting a § 1983 claim, failed to establish that "plaintiff's alleged injuries resulted from his exposure to elevated levels of arsenic or uranium." The Court reasoned that in "a § 1983 action, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury," which requires establishing "specific causation, whether a particular individual suffers from a particular ailment as a result of exposure to a substance." *Id.*

Here, Espinosa failed to point to any evidence in the record establishing that food condemnation was the cause of his stomach problems. Espinosa admitted that his "acid reflux, heartburn, and concerns about H. Pylori," had been ongoing for years before any alleged

35

food contamination occurred. 3-ER-282, ECF No. 62-8 at 11. As already set forth, Espinosa has no admissible evidence, through expert testimony, that his food was ever contaminated. Without such evidence, Espinosa cannot establish the required causation. *See Panchev*, 825 Fed. Appx. at 463 (holding that in a toxic tort case, a "plaintiff must demonstrate general causation, whether the substance at issue had the capacity to cause the harm alleged, and specific causation, whether a particular individual suffers from a particular ailment as a result of exposure to a substance"); *Campbell*, 463 Fed. Appx. at 635–36 (holding that "[s]ummary judgment on [prisoner's] deliberate indifference claim was proper" when the prisoner "failed to present sufficient evidence of causation between the alleged violations and any food-borne illness"); *see also Rolen*, 193 Fed. Appx. at 469-74 (affirming the grant of summary judgment in favor of the defendants, with respect to plaintiff's claim that a juice box contained "staphylococcal food poisoning" because the "record is devoid of expert evidence on the issue of causation").

As Espinosa failed to establish that food contamination was the actual and proximate cause of his stomach problems, he cannot establish that any Defendant was personally the actual and proximate cause of any risk of harm to Espinosa. Because causation is lacking, the district court erred when denying Defendants' motion for summary

36

judgment. This Court should therefore reverse the district court's judgment, and remand with instructions to grant Defendants' motion.

### E. Warden Gittere Is Entitled to Qualified Immunity Because He Did _NOT_ Retaliate Against Espinosa in Violation of the First Amendment

Espinosa failed to establish all of the required elements of a First Amendment retaliation claim. In *Chavez v. Robinson*, 12 F.4th 978, 1001 (9th Cir. 2021), this Court explained "a viable claim of First Amendment retaliation" requires the prisoner to establish "five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Espinosa offers no admissible evidence to establish all of these elements. At most, Espinosa relies upon speculative or conclusory allegations, which cannot establish a retaliation claim. *See Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1079, (9th Cir. 2003) (holding "conclusory allegations" supporting plaintiff's retaliation claim "are insufficient to defeat a motion for summary judgment"); *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (holding to "survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations"); *Surrell v. Cal.*

37

*Water Serv.*, 518 F.3d 1097, 1103 (9th Cir.2008) (holding "[c]onclusory statements without factual support are insufficient to defeat a motion for summary judgment").

### 1. Espinosa Failed to Meet His Burden of Showing that Warden Gittere Personally Took Any Adverse Action Against Him

Espinosa offers no admissible evidence that Warden Gittere personally took any adverse action against him. Espinosa wrongly argues that Warden Gittere retaliated against him by extracting Espinosa from his cell and relocating him to the infirmary for thirteen days, after Espinosa reported a metal wire in his food. 1-ER-4, ECF No. 106 at 22-25. Espinosa, however, has no admissible evidence that Warden Gittere had any involvement in transferring Espinosa to the infirmary.

Warden Gittere expressly declared: "I did not order CERT to extract Plaintiff, Bejamin Espinosa, and place him in the infirmary." 3-ER-290, ECF No. 62-1 at 3. Espinosa's only evidence to support his claim that Warden Gittere transferred him to the infirmary is Espinosa's allegations that unnamed ESP staff and officers supposedly told Espinosa that Warden Gittere ordered the transfer. 2-ER-139-40, ECF No. 74 at 4-5; 3-ER-421, ECF No. 23 at 8. Both the district court and the Magistrate Judge properly held that such allegations are "inadmissible hearsay" and "cannot be considered as evidence of

38

Defendant Gittere ordering cell extraction." 1-ER-27, 36; ECF No. 87 at 1:1-5, 9:24-27. *See also United States v. Romo–Chavez*, 681 F.3d 955, 959 (9th Cir. 2012) (explaining when "an out-of-court statement is offered to prove the truth of the matter asserted, it is hearsay and generally inadmissible"); *Sanders v. York*, 446 Fed. Appx. 40, 43, 2011 WL 3152814 (9th Cir. 2011) (holding "out-of-court statements by prison personnel" was hearsay). As Espinosa has no admissible evidence to contradict Warden Gittere's sworn statement, Warden Gittere did not transfer Espinosa to the infirmary, and therefore had no involvement in the supposed adverse action.

Moreover, contrary to Espinosa's insinuations, his move to the infirmary was not an adverse action at all. In *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016), this Court held "adverse retaliatory actions . . . are exercises of governmental power that are regulatory, proscriptive, or compulsory in nature and have the effect of punishing someone for his or her speech."

In his grievance submitted June 8, 2020, Espinosa claimed that upon finding "a piece of scotch brite brillo pad metal in my diner" he "got extremely sick in my digestive system bubbling and throwing up." 2-ER-171-73, ECF No. 74 at 36-38; 3-ER-346, ECF No. 62-2 at 56. Transferring Espinosa to the infirmary to protect his health can hardly be described as punishment. While Espinosa changed his story and

39

claimed that he was "perfectly health and [did] not require medical assistance" (2-ER-114, ECF No. 75 at 15), that does not change the fact that he previously reported his health was in danger just before his transfer to the infirmary. In this very action, Espinosa has already shown that he would certainly be claiming a lack of medical care if he had not been admitted to the infirmary.

In *Meachum v. Fano*, 427 U.S. 215, 224 (1976), the Supreme Court rejected the notion that "any change in the conditions of confinement [would] hav[e] a substantial adverse impact on the prisoner involved." The Court reasoned "transfers" are among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts" because the "conviction . . . empower[s] the State to confine [the prisoner] in any of its prisons." *Id*. at 224-25.

For that reason, in *Pratt v. Rowland*, 65 F.3d 802, 808-09 (9th Cir. 1995), this Court held the district court "erred in finding that inmate's transfer was effected for retaliatory reasons" based on the inmate's claim that he "wanted a transfer to a 'better' northern California prison." The Court determined "[s]uch a decision . . . is for the [Department of Corrections] DOC —not [the inmate], and not a federal court—to make." *Id*. at 809. The Court noted the Supreme Court "specifically expressed its disapproval of excessive judicial

40

involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Id.* at 807 quoting *Sandin v. Conner*, 515 U.S. 472, 482-83 (1995). The Court reasoned that courts "should evaluate retaliation claims in light of these general concerns expressed in *Sandin,*" and "in particular . . . should afford appropriate deference and flexibility to prison officials." *Pratt,* 65 F.3d at 807.

Transferring Espinosa to the infirmary was not an adverse action, especially when the transfer was the result of Espinosa's reported extreme sickness. While Espinosa may not have wanted to be transferred to the infirmary for his feigned illness, that transfer was not punitive, and was not an adverse action.

Accordingly, Espinosa cannot show that Warden Gittere took some adverse action against Espinosa required to establish a retaliation claim. *See Wright v. Dir. of Corr.*, 443 Fed. Appx. 289, 292–93, 2011 WL 2784070 (9th Cir. 2011) (rejecting inmate's retaliatory transfer claim when the inmate cannot establish who was involved in the decision to transfer him); *see also Iqbal,* 556 U.S. at 676 (holding a plaintiff must establish, based on non-conclusory evidence, that each Government-official defendant, through the official's own individual actions, has violated the Constitution" in order to "prove that the defendant acted with discriminatory purpose"); *Weathers v. Hagemeister-May*, 663 Fed.

41

Appx. 547, 549, 2016 WL 5817494 (9th Cir. 2016) (holding the "district court properly dismissed [*pro se* plaintiff's] retaliation claim because [plaintiff] failed to allege facts sufficient to show that any defendant participated in the alleged act of retaliation"). As Espinosa cannot establish an adverse action, and certainly cannot establish that Warden Gittere personally participated in an adverse action, the district court erred when denying Defendants' motion for summary judgment on this claim.

### 2. Espinosa Failed to Establish that He Was Transferred because He Complained of Contaminated Food

Even if Espinosa could establish that transferring him to the infirmary was an adverse action, he cannot establish that he was transferred to the infirmary because he complained of contaminated food. In *Riley v. Roach*, 572 Fed. Appx. 504, 506, 2014 WL 1853114 (9th Cir. 2014), this Court explained "to establish the element of causation," the inmate "must show that his protected conduct was the 'substantial' or 'motivating' factor behind the [prison official's] conduct." In *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014), this Court held a prisoner could not establish the "link" between the adverse action and the protected conduct when there was "no indication that [the adverse action was] made in reference to the [protected conduct], as opposed to [the inmate's] contemporaneous conduct" in prison. The Court reasoned

42

"mere speculation that defendants acted out of retaliation is not sufficient" to establish a retaliation claim. *Id.*

At most, Espinosa merely speculates that he was transferred to the infirmary due to his complaints of food contamination, rather than the much more likely reason because he claimed to be extremely sick and the prison infirmary is the place where offenders receive medical treatment.

In *Pratt*, this Court also rejected the district court's conclusion (1-ER-36, ECF No. 83 at 9:20-21) that causation could be based on timing alone. 65 F.3d at 808; *see also Phillippi v. Patterson*, 599 Fed. Appx. 288, 289, 2015 WL 1262437 (9th Cir. 2015); *Gray v. Shedd*, 559 Fed. Appx. 621, 621-22, 2014 WL 791822 (9th Cir. 2014). As Espinosa offers only timing alone to establish causation, Espinosa cannot establish a claim of retaliatory transfer.

### 3. Under Any Objective Standard, Espinosa's Speech Was Not Chilled

In *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999), this Court explained to establish chilling effect, an inmate "must show that the official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." In *Lyons v. Barth*, 637 Fed. Appx. 278, 281, 2015 WL 7770242 (9th Cir. 2015), this Court agreed that "prisoners may be required to tolerate more than

non-prisoners before an action by the authorities would be considered adverse—chilling." 637 Fed. Appx. at 281. This Court reasoned "the very status of being a prisoner necessarily means that just as the rights themselves are limited, actions taken which might seem chilling to non-prisoners are much more routine (and not chilling) to a prisoner of ordinary firmness." *Id*. at 281-82. No offender would be silenced, including Espinosa who repeatedly continued to submit Inmate Requests to the warden (2-ER-111-14, ECF No. 75 at 12-5), because he was transferred to the infirmary after he claimed an extreme illness. *See Hamilton v. Hernandez*, 500 Fed. Appx. 592, 595, 2012 WL 6053457, at *2 (9th Cir. 2012) (holding "transfer or discipline" without more does not show "a chilling effect on [an inmates] exercise of First Amendment rights").

In *Holleman v. Zatecky*, 951 F.3d 873, 881 (7th Cir. 2020), the Seventh Circuit held a "transfer that objectively improves the prisoner's condition . . . would not deter a person of ordinary firmness from engaging in protected activity." The court reasoned "prisoners are subjected to harsher conditions and environments than ordinary citizens, . . . and it is unlikely to be a home of anyone's choice" of "an ideal home." *Id*. at 882. Under any objective standard, moving Espinosa from to the infirmary after he claiming to be extremely sick would not deter any offender from filing a grievance or engaging in any

44

other protected conduct. Accordingly, Espinosa's claim of retaliation has no merit.

### 4. Espinosa Failed to Meet His Burden of Showing that Any Action Taken Was Not in Furtherance of a Legitimate Penological Goal

Espinosa "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806. Espinosa's admitted failure to meet his burden dooms his retaliation claim. *See Pratt*, 65 F.3d at 807; *Smith v. Goodenough*, 829 Fed. Appx. 257, 2020 WL 6689992 (9th Cir. 2020) (holding district court "properly granted summary judgment for defendant . . . because [prisoner] failed to raise a genuine dispute of material fact as to whether [defendant's] conduct did not reasonably advance a legitimate correctional goal"); *Ray v. Maceri*, 698 Fed. Appx. 475, 476, 2017 WL 4457203 (9th Cir. 2017) (same).

Even if Warden Gittere were subject to this burden, he more than met the burden. In Defendants' motion for summary judgment, they expressly stated that the transfer to the infirmary "was in furtherance of a legitimate correctional goal of maintaining the inmate's health." 3-ER-277, ECF No. 62 at 12:5-6. "Preventing disease and protecting the health of inmates are legitimate penological goals." *McClure v. Tucker*, 276 Fed. Appx. 574, 575, 2008 WL 1912872, at *1 (9th Cir. 2008); *Davies v. Allen*, 626 Fed. Appx. 728, 729, 2015 WL 9092186 (9th Cir.

45

2015) ("ascertain[ing] and investigat[ing] cases of specified diseases is reasonably related to legitimate penological interests").

As Espinosa failed to establish all five (5) elements required to establish a retaliation claim in violation of the First Amendment, this Court should reverse the district courts' order denying Defendants' motion for summary judgment, and remand with instructions to grant Defendants' motion in full.

### F. Espinosa Failed to Meet His Burden of Establishing a Violation of Clearly Established Law, Beyond Debate, Required to Overcome Qualified Immunity

Neither Espinosa, nor the district court, has cited any Supreme Court or circuit authority which squarely governs the facts of this case and would, beyond debate, clearly establish that Defendants violated the First or Eighth Amendment. In *Carley*, this Court held the "burden of proof rests" with Espinosa to prove both that "the officials conduct violated a constitutional right," and that the "violation was clearly established at the time of the violation." 103 F.4th at 659-60. In *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), this Court held that resolving dispositive motions "based on qualified immunity" requires conducting an "individualized analysis . . . , examining each of the . . . elements of the alleged" cause of action, when determining whether the law was clearly established. Espinosa, however, cannot

46

point to any binding precedent establishing that he meets all of the elements required to establish a First or Eighth Amendment violation.

No Court has held that a defendant violates the Eighth Amendment based on a failure to protect from food contamination when the offender offers no objective, admissible evidence of contamination and no defendant could possibly know that prison food was contaminated, because the prison investigation revealed no contamination, but the prison nevertheless instituted precautionary measures to prevent food contamination. To the contrary, the Supreme Court in *Farmer* established that such facts do not violate the Eighth Amendment. 511 U.S. at 824-38.

Similarly, no court has held that a defendant violates the First Amendment by transferring an offender to infirmary after reporting he was extremely sick, when the admissible evidence establishes that the defendant had no involvement in the transfer decision. Moreover, no court has held that an offender could reasonably believe that a transfer to the infirmary for a short 13 days after claiming extreme illness was an adverse action, which would chill the speech of an offender, required to establish an First Amendment violation. To the contrary, this Court has held that prisons, not courts, should make such discretionary transfer decisions, because protecting the health of offenders is a

47

legitimate penological goal. *Pratt*, 65 F.3d at 808-09; *McClure*, 276 Fed. Appx. at 575.

Espinosa therefore cannot establish a constitutional violation, much less meet his burden of showing a violation that was clearly established, beyond debate. *See Carley*, 103 F.4th at 659-60 (holding the "burden of proof rests" with the [inmate] to prove a both that "the officials conduct violated a constitutional right," and that the "violation was clearly established at the time of the violation"). Accordingly, Defendants are shielded by qualified immunity, and the district court erred when denying their motion for summary judgment. This Court should therefore reverse the district court's judgment, and remand with instructions to grant Defendants' motion because they are shielded by qualified immunity.

### G. This Court Must Accept as True NDOC Factual Findings Supported by Substantial Evidence

As extensively set forth, even if this Court accepts as true Espinosa's version of the facts, supported by admissible evidence, Defendants are entitled to summary judgment as a matter of law. Nevertheless, under the well-established principles of administrative law, this Court is required to accept as true NDOC's factual findings used to deny Espinosa's grievances, because those findings were supported by "some" or "substantial" evidence.

48

In *Woodford v. Ngo*, 548 U.S. 81, 84 (2006), the United State Supreme Court explained that the "centerpiece of the PLRA's [Prisoner Litigation Reform Act's] effort to reduce the quantity of prisoner suits is an invigorated exhaustion provision, [42 U.S.C.] § 1997e(a)." The Court explained that "[e]xhaustion of administrative remedies serves two main purposes." *Id*. at 89. "First, exhaustion protects administrative agency authority." *Id*. Exhaustion required by the "PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 93. The Court noted that this "is particularly important in relation to state corrections systems because it is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Id*.at 94. Indeed, the Supreme Court has repeatedly held that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment," and avoid "the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Sandin*, 515 U.S. at 482; *see also Thornburgh v. Abbott*, 490 U.S. 401, 407–08 (1989) (acknowledging "the expertise of [prison] officials and that the judiciary is 'ill equipped'

49

to deal with the difficult and delicate problems of prison management," and therefore the "Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world").

"Second, exhaustion promotes efficiency." *Woodford*, 548 U.S. at 89. "Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id*. "[E]ven where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id*. "As a general rule courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Id*. at 90. Accordingly, by requiring exhaustion of administrative remedies, the PLRA adopted the "well established . . . jurisprudence of administrative law." *Id*. at 88.

One of those "well established" administrative law principles is that the "reviewing court's function is limited." *Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 153 (1946), cited with approval in *Woodford,* 548 U.S. at 90. In *US West Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1117 (9th Cir. 1999), this Court held that while a "state agency's interpretation of a federal statute is

50

considered de novo," "all other issues [are considered] under an arbitrary and capricious standard." *See also Centennial Puerto Rico License Corp. v. Telecommunications Regulatory Bd. of Puerto Rico*, 634 F.3d 17, 26 (1st Cir. 2011) (compiling cases from other circuits reaching the same result); *MCI Worldcom Communications, Inc. v. BellSouth Telecommunications, Inc.*, 446 F.3d 1164, 1170 (11th Cir. 2006) (same). Under the arbitrary and capricious standard, a state agency's "findings of fact are reviewed for substantial evidence." *US West Communications, Inc. v. Jennings*, 304 F.3d 950, 958 (9th Cir. 2002). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Landes Construction Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). The court may not "weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists." *Id.*

Here, when ruling on Espinosa's grievances, NDOC concluded: "There is not any tampering of the food occurring." 2-ER-174, ECF No. 74 at 39; 3-ER-346, ECF No. 62-2 at 56. This conclusion was support by NDOC's investigation, which included reviewing video of meal preparation and interviewing staff and culinary workers, and reveled

51

"no evidence of tampering was found." 2-ER-107, ECF No. 75 at 8; 3-ER-362, ECF No. 62-4 at 3.

As NDOC findings are supported by substantial evidence, this Court must accept these findings as true. To do otherwise would effectively "turn the [PRLA's exhaustion requirement] into a useless appendage." *Woodford*, 548 U.S. at 93. Prisons would not be given a fair opportunity to correct their mistakes if a court could "topple over"' their findings of fact supported by substantial evidence simply because the court drew a different conclusion. Similarly, the record developed by prisons would become useless if courts could simply ignore the record with the prison's findings of fact. Additionally, ignoring a prison official's findings of facts would impinge on the broad discretion that should be afforded prison officials and convert courts into prison wardens, a position which courts are ill equipped to undertake. There is simply no justification for failing to afford prisons the same deference provided to other state agencies when reviewing their findings of fact, especially when the Supreme Court has repeatedly held that a state has no stronger interest than the administration of its prisons.

Accordingly, this Court should adopt NDOC's findings of fact, supported by substantial evidence, when ruling on summary judgment. Nevertheless, even accepting Espinosa's version of the facts, supported by admissible evidence, Defendants are still entitled to summary

judgment as a matter of law because they are shielded by qualified immunity.

## VIII. CONCLUSION

For the foregoing reasons, this Court should reverse the district court's judgment denying Defendants' motion for summary judgment, and remand with instruction to the district court to grant Defendants' motion for summary judgment in all respects.

Respectfully submitted August 22, 2025,

AARON D. FORD
Attorney General

By:  */s/ Chris Davis*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General

*Attorneys for the Defendants-Appellants*

## STATEMENT OF RELATED CASES

The undersigned attorney asserts that I am unaware of any related cases pending in the Ninth Circuit Court of Appeals.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 32-1, the attached brief is proportionately spaced, has a typeface of 14 points or more and contains 11,598 words.

Respectfully submitted August 22, 2025,


AARON D. FORD
Attorney General

By:    /s/ *Chris Davis*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General
*Attorneys for Defendants-Appellants*

54

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS-APPELLANTS' OPENING BRIEF** and **DEFENDANTS – APPELLANTS' EXCERPTS OF RECORD** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate electronic filing system on August 22, 2025.

Participants in the case who are registered users will be served by the appellate electronic filing system to:

Samuel Weiss, Esq.
RIGHTS BEHIND BARS
416 Florida Avenue, NW, No. 26152
Washington, DC 2000
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellee*

/s/ *Kimalee Goldstein*
An employee of the Office of the
Nevada Attorney General

55